Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

TATPONG KAEWJINO, *individually and on behalf of others similarly situated,*

*Plaintiff,*

-against-

326 RESTAURANT CORP. (d/b/a JOE ALLEN ), JULIA CRONAUER, TAYLOR CRONAUER, BRIAN SHAFFER and KEVIN SKINNER,

*Defendants.*

---------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Tatpong Kaewjino ("Plaintiff Kaewjino" or "Mr. Kaewjino"), individually and on behalf of others similarly situated, by and through his attorneys, Michael Faillace & Associates, P.C., and as against each of Defendants 326 Restaurant Corp. (d/b/a Joe Allen ) ("Defendant Corporation"), Julia Cronauer, Taylor Cronauer, Brian Shaffer and Kevin Skinner ("Individual Defendants"), (collectively, "Defendants"), alleges, upon information and belief, as follows:

## NATURE OF ACTION

1. Plaintiff Kaewjino was an employee of Defendants 326 Restaurant Corp. (d/b/a Joe Allen ), Julia Cronauer, Taylor Cronauer, Brian Shaffer and Kevin Skinner

2. Joe Allen is an Classic American restaurant owned by Julia Cronauer and Taylor Cronauer located at 326 W. 46th Street, New York, NY 10036.

3. Upon information and belief, Defendants Julia Cronauer, Taylor Cronauer, Brian Shaffer and Kevin Skinner serve or served as owners, managers, principals or agents of Defendant Corporation and through this corporate entity operate or operated the restaurant as a joint or unified enterprise.

4. Plaintiff Kaewjino was an employee of Defendants.

5. Plaintiff Kaewjino ostensibly worked as a server, but was required to spend several hours each day performing non-tipped duties unrelated to server work, including shining dishes and utensils, sweeping and mopping, bringing up ice from the basement to the bar, setting up tables, cutting bread and butter, refilling condiment and other stations, restocking stations with plates and silverware and setting up extra tables when the restaurant was very busy (hereinafter non-tip non-waiter duties).

6. At all times relevant to this Complaint, Plaintiff Kaewjino worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime compensation and spread of hours pay for the hours that he worked.

7. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiff Kaewjino appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8. Further, Defendants failed to pay Plaintiff Kaewjino the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9. Defendants employed and accounted for Plaintiff Kaewjino as a server in their payroll, but in actuality his duties included greater or equal time spent performing the non-waiter, non-tipped functions such as those alleged above.

10. However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Kaewjino' s non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

11. Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Kaewjino's actual duties in payroll records to avoid paying Plaintiff Kaewjino at the minimum wage rate, and to enable them to pay Plaintiff Kaewjino at the lower tip-credited rate.

12. Defendants' conduct extended beyond Plaintiff Kaewjino to all other similarly situated employees.

13. Plaintiff Kaewjino now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

14. Plaintiff Kaewjino seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

15. Further, Plaintiff Kaewjino seeks to recover back pay, compensatory and punitive damages for violations of his rights under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Executive Law, §290 et seq. (the "Human Rights Law"), and the Administrative Code of the City of New York, §8-107 et seq. (the "City Law").

16. Specifically, in violation of federal, state and local laws, Defendants engaged in repeated discriminatory and/or adverse employment actions against Plaintiff Kaewjino on the basis of his national origin, race and/or perceived sexual orientation.

17. For example, Plaintiff Kaewjino was constantly subjected to harassing behavior by the kitchen staff, including constantly touching his personal body parts (e.g. penis and but), slapping his but, calling him derogatory names in Spanish and laughing when other kitchen workers touched him or called him derogatory names; Sam, a fellow server,also would take Plaintiff Kaewjino's hand and force him to touch his penis; Plaintiff complained about this harassment to Defendants Brian Shaffer and Kevin Skinner, and they did not engage in any investigation of the matter.

18. In addition, Defendant Brian Shaffer discriminated against Plaintiff Kaewjino by terminating him and not a white co-worker who in a drunken stupor engaged in an argument with Plaintiff Kaewjino in front of a client.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff Kaewjino's state law claims is conferred by 28 U.S.C. § 1367(a).

20. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district,

defendants operate their business in this district, and Plaintiff Kaewjino was employed by Defendants in this district.

## **PARTIES**

*Plaintiff*

21. Plaintiff Tatpong Kaewjino is an adult individual residing in Queens County, New York. Plaintiff Kaewjino was employed by Defendants from approximately April 1, 2019 until on or about June 27, 2025.

22. Plaintiff Kaewjino consents to being party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

23. Defendants own, operate and/or control a classic American restaurant located at 326 West 46th Street, New York, NY 10036 under the name of Joe Allen, at all times relevant to this complaint.

24. Upon information and belief, Defendant 326 RESTAURANT Corp. ("Defendant Corporation") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 326 W. 46th Street, New York, NY 10036 .

25. Defendant Julia Cronauer is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Julia Cronauer is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporation.

26. Defendant Julia Cronauer possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Julia Cronauer determined the wages and compensation of employees, including Plaintiff Kaewjino, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

27. Defendant Taylor Cronauer is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Taylor Cronauer is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. Defendant Taylor Cronauer possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Taylor Cronauer determined the wages and compensation of employees, including Plaintiff Kaewjino, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

28. Defendant Brian Shaffer is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Brian Shaffer is sued individually in his capacity as a manager of Defendant Corporation. Defendant Brian Shaffer possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Brian Shaffer determined the wages and compensation of employees, including Plaintiff Kaewjino, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

29. Defendant Kevin Skinner is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Kevin Skinner is sued individually in his capacity as a manager of Defendant Corporation. Defendant Kevin Skinner possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Kevin Skinner determined the wages and compensation of employees, including Plaintiff Kaewjino, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30. Defendants own, operate and/or control a classic American restaurant located in the Theatre district section of Manhattan in New York City.

31. Individual Defendants Julia Cronauer, Taylor Cronauer, Brian Shaffer and Kevin Skinner possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

32. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33. Each Defendant possessed substantial control over Plaintiff Kaewjino's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Kaewjino, and all similarly situated individuals, referred to herein.

34. Defendants jointly employed Plaintiff Kaewjino, and all similarly situated individuals, and are Plaintiff Kaewjino's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35. In the alternative, Defendants constitute a single employer of Plaintiff Kaewjino and/or similarly situated individuals.

36. Upon information and belief, Individual Defendants Julia CRONAUER and TAYLOR CRONAUER operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by, among other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b) defectively forming or maintaining Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

(d) operating Defendant Corporation for their own benefit as the sole or majority shareholders;

(e) operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f) intermingling assets and debts of their own with Defendant Corporation;

(g) diminishing and/or transferring assets of Defendant Corporation to protect their own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

37. At all relevant times, Defendants were Plaintiff Kaewjino's employers within the meaning of the FLSA and NYLL.

38. Defendants had the power to hire and fire Plaintiff Kaewjino, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff Kaewjino's services.

39. In each year from 2019 to 2025, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were sold in the restaurant on a daily basis were produced outside of the State of New York.

*Individual Plaintiff*

41. Plaintiff Kaewjino is a former employee of Defendants, who was employed as a server. However, he spent more than 20% of each shift performing the non-tipped duties described above.

42. Plaintiff Kaewjino seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Tatpong Kaewjino*

43. Plaintiff Kaewjino was employed by Defendants from approximately April 1, 2019 until on or about June 27, 2025.

44. Defendants ostensibly employed Plaintiff Kaewjino as a server.

45. However, Plaintiff Kaewjino was also required to spend a significant portion of his work day performing the non-tipped duties described above.

46. Although Plaintiff Kaewjino ostensibly was employed as a barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

47. Plaintiff Kaewjino regularly handled goods in interstate commerce, such as food, condiments and supplies necessary to perform his duties as a cook.

48. Plaintiff Kaewjino's work duties required neither discretion nor independent judgment.

49. From approximately September 8, 2019 until on or about March 2020, Plaintiff Kaewjino worked from approximately 10:30 a.m. until on or about 3:30 p.m. one day a week, from approximately 10:30 a.m. until on or about 4:30 p.m. one day a week, from approximately 4: 00 p.m. until on or about 12:00 a.m. one day a week and from approximately 4:00 p.m. until on or about 11:30 p.m. one day a week (Typically 26.5 hours per week).

50. From approximately August 1 2021 until on or about December 2024, Plaintiff Kaewjino worked a range of 55 to 65 hours per week).

51. From approximately January 2025 until on or about June 27, 2025, Plaintiff Kaewjino worked a range of 45 to 55 hours per week.

52. Throughout his employment, Defendants paid Plaintiff Kaewjino his wages by check.

53. From approximately September 2019, until on or about December 2023, Defendants paid plaintiff Kaewjino $10.50 per hour for the first 40 hours and $15.75 per hour for the hours worked over 40 in a week.

54. From approximately January 2024, until on or about December 2024, Defendants paid Plaintiff Kaewjino $10.65 per hour.

55. From approximately January 2025 until on or about June 27, 2025,Defendants paid Plaintiff Kaewjino $11.50 Per hour.

56. Although Plaintiff Kaewjino was required to keep track of his time, from approximately January 2024 until on or about June 27, 2025 Defendants required him to falsely only report 40 hours of work.

57. Specifically, Defendants forced Plaintiff Kaewjino to punch in late and punch out early so that he would falsely appear to only work 40 hours per week.

58. From approximately January 2024 until on or about June 27, 2025,Defendants did not provide Plaintiff Kaewjino with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

59. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Kaewjino regarding wages as required under the FLSA and NYLL.

60. Although Defendants did provide Plaintiff Kaewjino with each payment of wages a statement of wages, from approximately January 2024 until on or about June 27, 2025, such statement of wages did not reflect the actual hours Plaintiff Kaewjino had worked each week, as required by NYLL 195(3).

61. Defendants did not give any notice to Plaintiff Kaewjino, in English and in Spanish (Plaintiff Kaewjino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

62. As a result of Defendants' failure to provide Plaintiff Kaewjino with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

63. Defendants required Plaintiff Kaewjino to purchase "tools of the trade" with his own funds—including nine to ten dress shirts per year, 3 pairs of pants per year, three pairs of shoes per year, and four wine openers per year.

## NATIONAL ORIGIN,RACE AND/or PERCEIVED SEXUAL ORIENTATION DISCRIMINATION

64. Plaintiff Kaewjino was constantly subjected to harassing behavior by the kitchen staff, including constantly touching his personal body parts (e.g., penis and but), slapping his but, calling him derogatory names in Spanish and laughing when other kitchen workers touched him or called him derogatory names.

65. Sam, a fellow server, also would take Plaintiff Kaewjino's hand and force him to touch his penis.

66. Plaintiff Kaewjino complained about this harassment to Defendants Brian Shaffer and Kevin Skinner, and they did not engage in any investigation of the matter.

67. In addition, Defendant Brian Shaffer discriminated against Plaintiff Kaewjino by terminating him and not a white co-worker who in a drunken stupor engaged in an argument with Plaintiff Kaewjino in front of a client.

68. Specifically, on June 27, 2025, Sam a fellow server,who was under the influence of alcohol, directed Plaintiff Kaewjino to serve a table that was not in Plaintiff Kaewjino's assigned area.

69. Plaintiff Kaewjino attempted to explain to Sam, his drunk co-worker, that the table was not assigned to him, but Sam, a white employee, started arguing with him in front of customers.

70. Defendant Brian Shaffer, who was also intoxicated, only warned Plaintiff Kaewjino and ordered him to come back the next day, despite the fact that Sam, the drunken co-worker was the one who argued in front Of the customers and later smashed a glass rack and continued yelling in front of the customers.

71. The next day, Brian Shaffer and Kevin Skinner terminated Plaintiff Kaewjino on the basis that he was violating a employee handbook rule prohibiting arguing in front of clients, despite the fact that all Plaintiff Kaewjino did was to clarify to Sam, a fellow intoxicated co-worker, that he was not assigned to work on that table.

72. Defendants Brian Shaffer and Kevin Skinner only terminated Plaintiff Kaewjino and not Sam, a white co-worker who in a drunken stupor was the only one who engaged in an argument in front of customers.

73. Defendant's constant abusive mistreatment of Plaintiff Kaewjino has caused him serious mental and emotional distress.

74. Plaintiff Kaewjino was damaged in an amount to be determined at trial.

*Defendants' General Employment Practices*

75. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Kaewjino (and all similarly situated employees) to work in excess of 40

hours a week without paying him appropriate minimum wage, spread of hours pay and overtime compensation as required by federal and state laws.

76. Plaintiff Kaewjino was a victim of Defendants' common policy and practices which violate his rights under the FLSA and New York Labor Law by, *inter alia*, not paying him the wages he was owed for the hours he worked.

77. New York State regulations provide that an employee cannot be classified as a tipped employee "on any day...in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R.§§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R.§531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

78. Plaintiff Kaewjino's duties were not incidental to his occupation as a server , but instead constituted entirely unrelated occupations with non-tip duties such as those outlined above. While performing these duties, Plaintiff Kaewjino did not receive tips; therefore, they constituted non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiff Kaewjino worked in these roles.

79. In violation of federal and state law as codified above, Defendants classified Plaintiff Kaewjino as a tipped employee, when they should have classified him as a non-tipped employee and paid him at the minimum wage rate.

80. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Kaewjino by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

81. Defendants' pay practices resulted in Plaintiff Kaewjino not receiving payment for all his hours worked, resulting in Plaintiff Kaewjino's effective rate of pay falling below the required minimum and overtime wage rate.

82. Plaintiff Kaewjino has been a victim of Defendants' common policy and practices violating his rights under the FLSA and New York Labor Law by *inter alia*, not paying him the wages he was owed for the hours he had worked.

83. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

84. Defendants forced Plaintiff Kaewjino to punch in late and punch out early so that he would falsely appear to only work 40 hours per week.

85. Defendants paid Plaintiff Kaewjino his wages by check.

86. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Kaewjino (and similarly situated individuals) worked, and to avoid paying Plaintiff Kaewjino properly for (1) appropriate minimum wage, (2)spread of hours pay, and (3) for overtime due.

87. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL. Defendants failed to provide Plaintiff Kaewjino' and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

88. Defendants failed to provide Plaintiff Kaewjino and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

89. As a result of Defendants' failure to provide Plaintiff Kaewjino and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiff Kaewjino and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

**FLSA COLLECTIVE ACTION CLAIMS**

90. Plaintiff Kaewjino brings his FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all

similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Joe ALLEN), Cafe Joe Allen(the "FLSA Class").

91. At all relevant times, Plaintiff Kaewjino and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage under the FLSA, the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, willfully taking improper wage deductions and other improper credits against Plaintiff Kaewjino' wages for which Defendants did not qualify under the FLSA, and willfully failing to keep records required by the FLSA.

92. The claims of Plaintiff Kaewjino stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**

**(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

93. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

94. At all times relevant to this action, Defendants were Plaintiff Kaewjino employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Kaewjino (and the FLSA Class Members), controlled the terms and

conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

95. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

96. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

97. Defendants failed to pay Plaintiff Kaewjino (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

98. Defendants' failure to pay Plaintiff Kaewjino (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

99. Plaintiff Kaewjino (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

100. Plaintiff Kaewjino repeats and re-alleges all paragraphs above as though fully set forth herein.

101. Defendants, in violation of 29 U.S.C. § 207(a)(1) of the FLSA, failed to pay Plaintiff Kaewjino and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

102. Defendants' failure to pay Plaintiff Kaewjino (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

103. Plaintiff Kaewjino was damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**(VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)**

104. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

105. At all times relevant to this action, Defendants were Plaintiff Kaewjino's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Kaewjino, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

106. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Kaewjino less than the minimum wage.

107. Defendants' failure to pay Plaintiff Kaewjino the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

108. Plaintiff Kaewjino was damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(VIOLATION OF THE OVERTIME PROVISIONS OF THE NYLL)**

109. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

110. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Kaewjino

overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

111. Defendants' failure to pay Plaintiff Kaewjino overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

112. Plaintiff Kaewjino was damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMISSIONER OF LABOR)**

113. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

114. Defendants failed to pay Plaintiff Kaewjino one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Kaewjino 's spread of hours exceeded ten hours in violation of NYLL §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-1.6.

115. Defendants' failure to pay Plaintiff Kaewjino an additional hour's pay for each day Plaintiff Kaewjino 's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

116. Plaintiff Kaewjino was damaged in the amount of $5,000, together with costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**

**(VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW)**

117. Plaintiff Kaewjino repeats and re-alleges all paragraphs above as though fully set forth herein.

118. Defendants failed to provide Plaintiff Kaewjino with a written notice before July 2024, in English and in Spanish (Plaintiff Kaewjino's primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

119. As a result of Defendants' failure to furnish an accurate wage notice to Plaintiff Kaewjino, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

120. Defendants are liable to Plaintiff Kaewjino in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

121. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

122. With each payment of wages, Defendants failed to provide Plaintiff Kaewjino with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or

rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

123. As a result of Defendants' failure to furnish accurate statements to Plaintiff Kaewjino Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

124. Defendants are liable to Plaintiff Kaewjino in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

125. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

126. Defendants required Plaintiff Kaewjino to pay, without reimbursement, the costs and expenses for purchasing and maintaining clothing and "tools of the trade" required to perform his job, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

127. Plaintiff Kaewjino was damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**(DISCRIMINATION BASED ON NATIONAL ORIGIN and RACE IN VIOLATION OF SECTION 1981)**

128. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

129. At all times material herein, Defendants are employers within the meaning of Section 1981.

130. On numerous occasions, Defendants wrongfully discriminated against Plaintiff Kaewjino because of his national origin and race, contrary to Section 1981.

131. In discriminating against Plaintiff Kaewjino because of his national origin and race, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiff Kaewjino's lawful civil rights.

132. As a result of Defendants' discriminatory acts, Plaintiff Kaewjino has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

133. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff Kaewjino's rights.

134. Plaintiff Kaewjino has been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

**(DISCRIMINATION BASED ON NATIONAL ORIGIN,RACE AND PERCEIVED SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

135. Plaintiff Kaewjino incorporates and re-alleges each preceding paragraph as though fully restated.

136. New York State Executive Law § 296(1)(a) provides that it shall be an unlawful discriminatory practice:

> [f]or an employer . . . because of an individual's age, race, creed,

> color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions of privileges of employment.

137. At all times material herein, Defendants are employers within the meaning of the New York State Human Rights Law.

138. Defendants' acts and omissions constitute national origin and/or sexual orientation discrimination and retaliation in violation of the New York State Human Rights Law.

139. In violation of the New York State Human Rights Law, Defendants' acts and omissions constitute a continuing violation and ongoing policy and practice of intentional discrimination and retaliation motivated by animus towards Plaintiff Kaewjino's national origin, race and sexual orientation .

140. Defendant's acts and omissions were related to the unlawful discrimination and retaliation within the limitation period.

141. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to the rights of Plaintiff Kaewjino

142. As a direct and proximate cause of this misconduct, Plaintiff Kaewjino has suffered and will continue to suffer substantial losses, including loss of past and future earnings

and other benefits of employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

143. Plaintiff Kaewjino has been damaged in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**(VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW)**

144. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

145. Defendants are an employer within the meaning of the New York City Human Rights Law.

146. Defendants wrongfully discriminated against Plaintiff Kaewjino because of his national origin, race, and perceived sexual orientation contrary to the New York Human Rights Law, N.Y. Exec. L. § 296.

147. In discriminating against Plaintiff Kaewjino because of his national origin, race, and perceived sexual orientation, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiff Kaewjino's lawful civil rights.

148. Plaintiff has been damaged in an amount to be determined at trial.

**TWELTH CAUSE OF ACTION**

**(DISCRIMINATION BASED ON NATIONAL ORIGIN,RACE AND PERCEIVED SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

149. Plaintiff Kaewjino repeats and realleges all paragraphs above as though fully set forth herein.

150. New York City Admin. Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice (a) [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person: (1) [t]o represent that any employment or position is not available when in fact it is available; (2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

151. At all times material herein, Defendants are employers within the meaning of the New York City Human Rights Law.

152. Defendants wrongfully discriminated against Plaintiff Kaewjino because of his national origin, race and perceived sexual orientation , contrary to the New York City Human Rights Law, N.Y.C.A.C. § 8-107(1)

153. In discriminating against Plaintiff Kaewjino because of his national origin, race and perceived sexual orientation, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiff Kaewjino's lawful civil rights.

154. As a direct and proximate cause of Defendants' misconduct, Plaintiff Kaewjino has suffered substantial losses, including loss of past and future earnings and other benefits of

employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

155. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff Kaewjino's rights.

156. Plaintiff Kaewjino has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kaewjino respectively requests that this Court enter judgement against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiff Kaewjino in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Kaewjino and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Kaewjino and the FLSA Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Kaewjino's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Kaewjino and the FLSA Class members;

(f) Awarding Plaintiff Kaewjino and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiff Kaewjino and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Kaewjino;

(i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Kaewjino;

(j) Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Kaewjino and the members of the FLSA Class;

(k) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Kaewjino's compensation, hours, wages and any deductions or credits taken against wages;

(l) Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Kaewjino;

(m) Awarding Plaintiff Kaewjino damages for the amount of unpaid minimum wage,

spread of hours pay and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n) Awarding Plaintiff Kaewjino damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o) Awarding Plaintiff Kaewjino liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p) Awarding Plaintiff Kaewjino and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q) Declaring the acts and practices complained herein violated Section 1981, the New York City Human Rights Law, and the New York State Human Rights Law;

(r) Directing Defendants to pay Plaintiff Kaewjino compensatory and punitive damages;

(s) Awarding reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. §2000e-5(k); 42 U.S.C. § 1988(b); New York State Executive Law § 297.10 and New York City Admin. Code §8-502(g);

(t) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4);

(u) All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kaewjino demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
September 8, 2025

MICHAEL FAILLACE & ASSOCIATES, P.C.

______/s/ Michael Faillace_____________ ___

By: Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*